Waldo, J.
The statute upon wdiich these proceedings are predicated, provides that whenever adjoining proprietors, whose lands are' otherwise inclosed in severalty, or whenever by distribution, sale or otherwise, a particular inclosure shall be divided between two or more proprietors, and either proprietor shall desire to have a division fence erected, and the parties can not agree, any two of the fence viewers of the town where the land is situated may view said dividing line, after reasonable notice to said proprietors, and if said fence viewers shall deem it reasonable that such fence should be erected at the expense of each of said adjoining proprietors, they shall divide and slake out said line, and assign to each his portion thereof, and limit a time within which the fence shall be erected; and it then becomes the duty of each proprietor to erect a lawful fence on the portion of the line so set to him. And if either of the proprietors shall make his portion of the fence, and the other proprietor shall neglect to build his within the time limited, said *161 fence viewers may build the same, or may authorize the proprietor who has erected his portion to build the same, and when said fence is so built, the builder may recover of the party so neglecting, the expense of building and the fees of the fence viewers, in an action of debt.
These provisions were intended to remedy a defect in the old law relating to fences, where adjoining proprietors, holding their lands in severalty by particular inclosures, refused or neglected to build a fence upon the line dividing such inclosures. To justify a proceeding under these provisions, the lands of the adjoining proprietors must be otherwise inclosed in severalty, or they must consist of a particular inclosure divided between the proprietors, without a divisional fence, which one of the proprietors-must desire to have erected. Under these circumstances, two of the fence viewers of the town in which the land is situated, may view said dividing line, and if they shall be of opinion that it is reasonable that a fence should be ^erected upon said line at the expense of each of said [ *197 ] adjoining proprietors, they are to divide and stake out said iine, and assign to each his portion thereof. The fence viewers are r.ot to make a division of the land between the proprietors, for the land must consist of particular inclosures occupied in severalty by adjoining proprietors. Nor are they to settle a disputed line, or erect or establish lost or uncertain boundaries, for these duties are, by another statute, committed to another tribunal. Rev. Stat., tit. 29, § 22. But they are “ to view said dividing line,” language clearly implying that the line is settled and known, and “ if they deem it reasonable that such fence should be erected at the expense of each of said adjoining proprietors, they shall divide and stake out said line.” Upon viewing the line between the proprietors, they are first to determine whether the fence upon it should be erected at the expense of both of said proprietors, and if so, they are then to divide the line between them, and the portion allotted to each is to be by them staked out. If the line between the proprietors be unknown, or the boundaries lost or uncertain, the fence viewers have not jurisdiction of the subject matter, and, unless they chance to locate the fence on the true line, their acts will be void. Gallup v. Mulvah, 4 Foster, 204. Shaw v. Gilfillan, 22 Verm., 565.
Upon the trial of this case it was agreed that the land in question was formerly owned in fee by William Talcott, who died intestate; that the plaintiff and the grantor of the defendant were children of the said William and heirs at law to his estate; that, by a parol agreement between the children of William, his *162 lands were divided between thém in the year 1838, and that since that time said children and their assigns have occupied their respective share's under said division a's their own, and that the share of the plaintiff and the defendant’s grantor* adjoined each other. But it was not agreed that there was any known •or established line or boundaries between these two shares, and the parties were at issue upon that question. The plaintiff claimed to have occupied up to the line oh which the fence was built, and in this way to have acquired a title to that [ *198 ]' line. ' The defendant *denied this claim of the plaintiff. The court has found that the plaintiff’ has not had exclusive possession up to the line of the fence, and has not acquired a title by occupancy up to th'at line, and that, at the time of the proceedings of the fence viewers relating to said-fence, the plaintiff was not in' the exclusive and actual possession up to that line.
The plaintiff objected to the admission of any. evidence on the part of the defendant tending to show that this fence was not built upon the true line, but the court overruled’ the objection and received the evidence. We think the court was right in receiving this evidence. It certainly was competent for the defendant to show that the fence viewers had no jurisdiction of-the subject matter, for in such case their action would be void. And evidence that tended to show that there was no known or recognized line between these parties, tended to show a want of jurisdiction in the fence viewers, for they can only view and decide upon a'known line. ’ The evidence offered by the defendant had this tendency and was therefore admissible. Nor do we perceive that the aspect of the case is in any manner changed by the facts claimed by the plaintiff; such as that she acted in good faith under the direction of the fence viewers, and built the fence to their acceptance, and that the defendant did not appear before said fence viewers, and neglected to build the fence as required by them. The plaintiff, in good faith, may have supposed she was the owner of more land than of right belonged to her, and she might have desired to have all she claimed included within her separate inclosure. But. if her claims were not recognized by the adjoining proprietor, and there was no settled and known line between them, the fence viewers had no authority to undertake to pass upon the validity of her claims. These should 'have been submitted to another tribunal, authorized to settle questions of this character, and whose determination would have been obligatory upon the parties. As the action of the fence viewers in attempting to locate an uncertain line between these parties was unauthorized, *163 it was not obligatory, nor could it be *made so by the honesty and bona fides of the transaction on the part of the plaintiff.
Nor do we yield our assent to the claim of the plaintiff, that the only object of the legislature in adopting the provisions under consideration, was-to provide for a temporary fence while the line between the proprietors was in controversy; or, that» the fence viewers had authority to settle the line temporarily, and direct a fence to be built on land belonging to the defendant, and charge him with a portion of the expense. If the fence was not erected on the true line but upon the land of the defendant, as claimed by him and found by the court, the building of the fence was not only a trespass upon the property of the defendant, but it also actually ousted him of the possession of a portion of his land- and inflicted upon him a positive injury. Under these circumstances we do not believe the legislature intended to make him pay for the injury he had received, or to aid in the erection of a nuisance upon his own land.
The plaintiff relies upon the case of Corlis v. Little, 1 Green, 229, to sustain her view of this case. The proceedings in that case were upon a statute of the state of New Jersey, in which provision is made for locating a fence between adjoining proprietors when the parties can not agree upon the place themselves. And it authorizes the person proposing to make the fence, to apply to any two of the township committee residing nearest the premises, being disinterested, who on hearing the allegations and proofs of the parties, are to fix and appoint the place where the fence is to be made; and when the fence is made in the place so appointed, the builder may recover the proper proportion of the expense from the other party, “ although it may not happen to be exactly on the division line between said parties.” It is very obvious that the statute authorizes, in appropriate language, the erection of a fence between proprietors where the line is in dispute or is unknown, and provides for the contingency of its not being built “ exactly on the division line.” The question in the case arose upon the admission in evidence of an order made by the township committee locating *a divisional fence. In refer- [ *200 ] ence to this subject the court say: “ The order is intended by statute for fixing the place of a temporary partition fence until the place shall be settled, and though it may not happen to fix the place right, it shall enable the party making the fence to recover from the other party his just proportion, of the expense.” The right of the plaintiff to recover is put upon the ground that the statute authorized the particular proceeding, and provided for the payment of the expense, although the fence *164 might not be erected on the true line. But for this provision of the statute the proceeding would have been unauthorized, and the plaintiff could not have recovered, and inasmuch as we have no such statute that case can not be regarded as an authority.
The plaintiff has also referred to the case of Baker v. Lakeman, 12 Met., 195. In that case the plaintiff sought to recover double the value of a partition fence erected by him under the provisions of a statute of the state of Massachusetts. The parties wrere adjoining proprietors, and in the year 1827, a division of the line between them was made by the fence viewers, who assigned to each party his share of the partition fence. At that time the parties both supposed they were adjoining proprietors along the whole of the divided line, and both seemed to acquiesce in the division. But in the year 1835 there was a decision of the Supreme Judicial Court in a case between other parties, from which the plaintiff (Baker,) claimed a portion of the land on both sides of the divisional line. In tire year 1843 he complained to the fence viewers that the defendant refused to repair his part of said divisional fence; and after taking the other necessary steps he brought his action for building the fence. The defendant claimed that the assignment of the respective shares of the fence to the several proprietors in the year 1827, had ceased to be binding in consequence of the decision of the Supreme Judicial Court, made in the year 1835, and objected to evidence tending to prove that any such assignment had been made. The question in that case was as to the effect of the assignment made by the fence viewers in [ *201 ] the *ye'ar 1827. The court held it to be good. In giving the unanimous opinion of the court, Dewey, J., says: “ It is true that there has been a judicial decision as to the legal title in 1835, which has varied the line of the parties and affected their occupation. We do not perceive how this can have any legal effect upon the division made in 1827. If there be any provision for correcting the error, the defendant should have availed himself of it. It was the existing assignment at the time the plaintiff applied to the fence viewers to view the fence and adjudge as to its want of repair, and was properly assumed as the division between the parties in the various proceedings by the fence viewers.” There was no question made in regard to the jurisdiction of the fence viewers, which is the distinguishing feature between that and the case under consideration, and we can not regard the cases as at all parallel.
*165 We do not find any error in the proceedings of the superior court, and do not advise a new trial.
In this opinion the other judges concurred ; except Hinman, J., who was absent.
New trial not advised.'